UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE KANDI TECHNOLOGIES GROUP, INC. SECURITIES LITIGATION

**OPINION AND ORDER**

17 Civ. 1944 (ER)

Ramos, D.J.:

In this putative class action against Kandi Technologies Group, Inc. ("Kandi"), Co-Lead Plaintiffs, Gary Vatter and Gerald Klein (collectively "Plaintiffs") assert causes of action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") individually and on behalf of similarly situated shareholders. Current and/or former Kandi executives XiaoMing Hu, Bing Mei, XiaoYing Zhu and Cheng Wang ("Wang") are also named as defendants. The Consolidated Amended Complaint ("CAC") asserts claims for violations of Sections 10(b) (and Rule 10b-5 promulgated thereunder) and 20(a) of the Exchange Act, 15 U.S.C. § 78a *et seq*. *See* CAC (Doc. 42). Defendants Kandi, Xiaoming Hu, Bing Mei, Xiaoying Zhu, Cheng Wang (the "Individual Defendants," and with Kandi, "Defendants") bring this motion to dismiss the CAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. *See* Doc. 50. For the reasons set forth below, Defendants' motion is GRANTED.

## I. BACKGROUND[1]

### A. The Parties

Co-Lead Plaintiffs purchased Kandi common stock throughout the Class Period (November 15, 2013 through March 13, 2017). CAC ¶¶ 26, 27.

---

[1] The facts are drawn from the CAC, "together with those 'documents . . . incorporated in it by reference' and 'matters of which judicial notice may be taken.'" *Wilson v. Merrill Lynch & Co*., 671 F.3d 120, 123 (2d Cir. 2011) (ellipsis in original) (citation omitted). The Court may also consider any document where the complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *City of Brockton Ret. Sys. v. Avon Prods., Inc*., No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted). The Court "may also consider 'legally required public disclosure documents

Kandi is a Delaware corporation with its headquarters at Jinhua City Industrial Zone, Jinhua, Zhejiang Province, People's Republic of China. *Id*. ¶¶ 28, 29. Kandi went public in June 2007 and trades on NASDAQ under the ticker symbol "KNDI." *Id*.

The individual defendants were all executives at Kandi throughout the Class Period. Xiaoming Hu has been Kandi's Chief Executive Officer, President and Chairman of the Board since June 2007. *Id*. ¶ 30. Bing Mei has been Kandi's Chief Financial Officer ("CFO") since November 14, 2016 and a director of Kandi since December 16, 2016. *Id*. ¶ 31. Xiaoying Zhu was Kandi's CFO from June 2007 to April 30, 2015. *Id*. ¶ 32. Cheng Wang was Kandi's CFO from May 1, 2015 to November 14, 2016, when he resigned as CFO and became Kandi's new Chief Strategy Officer. *Id*. ¶ 33. Wang was also a director of Kandi from May 20, 2015 to November 14, 2017. *Id*. ¶¶ 33, 191.

### B. Factual Allegations

Kandi designs, produces, manufactures and distributes electric vehicles ("EV"), EV parts and off-road vehicles, mostly in China. *Id*. ¶ 2. In September 2013, the Chinese government announced an expansion of government subsidies for EV manufacturers and purchasers. *Id*. ¶ 3. Kandi thereafter devised a strategy to benefit from the EV subsidies. *Id*. ¶ 4. Kandi sold its EV parts to a joint venture company (the "JV Company"), in which Kandi held 50 percent interest. *Id*. The JV Company manufactured EV vehicles, received the government subsidies for EV manufacturers, and sold them to a third company–Zhejiang ZuoZhongYou Vehicle Service Company (the "ZZY Company"). *Id*. Kandi indirectly held 9.5 percent interest in the ZZY Company through its ownership in the JV Company. *Id*. ¶¶ 4, 54. The ZZY Company received

---

filed with the SEC'" and other publicly-available information, such as press releases and earnings call transcripts. *See id.* (citation omitted).

2

the EV subsidies from the Chinese government as purchaser of the EV vehicles. *Id*. ¶ 4. Throughout the Class Period, Kandi's business model was based on the ZZY Company and the JV Company's prompt receipt of the EV subsidies. *Id*. ¶ 4. As a result, Kandi's EV operations started to grow in 2012 and 2013. *Id*. ¶ 44. By 2015, Kandi's annual revenues and profits had doubled, a majority of which came from its sale of EV parts and products. *Id*. ¶ 45.

In early 2016, the Chinese government conducted an investigation into its EV subsidy program and suspended the subsidies for those vehicles sold in 2015 and 2016. *Id*. ¶ 6. This negatively impacted Kandi's business model and ability to pay its vendors and suppliers. *Id*. ¶7. As a result, Kandi began to assign its outstanding notes receivable, mostly from the JV Company, to its vendors and suppliers. *Id*. ¶ 8. Kandi also extended the credit terms offered to the JV Company from the original 90-210 days to 210-720 days. *Id*. ¶¶ 8, 139.

### C. Alleged Misrepresentations and Omissions

On March 16, 2015, Kandi filed its 2014 Annual Report Form 10-K reporting that EV parts sales had increased from $1.6 million to $116.4 million and the total revenues had grown from $94.5 million to $170.2 million in 2014. *Id*. ¶ 98. In relevant part, the 2014 10-K stated that Kandi had received $29,354,492 in cash from repayment of notes receivable and had paid out $24,705,489 in cash by issuing notes receivable. *Id*. ¶ 101. Plaintiffs allege that these representations were false and misleading because Kandi's 2016 10-K later disclosed that more than half of the $29,354,492 were not repayment to Kandi in cash, but actually represented either Kandi's collection of notes receivable or Kandi's assignment of notes receivable to its suppliers to settle accounts payable." *Id*. ¶ 102. Additionally, more than half of the $29,354,492 actually represented Kandi's use of notes receivable instead of payment in cash, to settle its trades receivable. *Id*.

3

On March 14, 2016, Kandi filed its 2015 Annual Report Form 10-K. *Id*. ¶ 130. In relevant part, the 2015 10-K stated that Kandi had received $127,226,115 in cash as repayment of notes receivable and paid out $131,852,319 in cash by issuing notes receivable. *Id*. ¶ 136. Again, more than half of the $127,226,115 were in fact not repayment to Kandi in cash and more than half of the $131,852,319 were not payment by Kandi in cash. *Id*.

Plaintiffs also allege that Defendants failed to properly reflect related-party transactions in Kandi's financial documents as required by SEC Regulation S-X,[2] *id*. ¶¶ 265-66, or to file separate financial statements for the JV Company as a significant majority-owned subsidiary in 2014 and 2015 as required by regulation S-X.[3] *Id*. ¶¶ 268-71. In addition, Plaintiffs allege that Defendants made false and misleading statements in stating that Kandi had effective internal controls in place in its 2013 Third Quarter 10-Q, 2014 Third Quarter 10-Q, 2014 10-K, 10-Q for all quarters in 2015 and 2016 and 2015 10-K, because Defendants' aforementioned misrepresentations and omissions in violation of the Generally Accepted Accounting Principles ("GAAP") show Kandi's weak internal controls. *Id*. ¶¶ 68, 96, 107, 113, 119, 126, 145, 156, 164, 189. Plaintiffs further allege that Defendants made false and misleading statements in each of their financial statements throughout the Class Period, except for Kandi's 2013 10-Q, because they failed to disclose that the previous financial statements had not materially conformed with GAAP. *Id*.

---

[2] SEC Regulation S-X requires that, *inter alia*, "amounts of related party transactions should be stated on the face of the balance sheet, statement of comprehensive income, or statement of cash flows." *See* 17 C.F.R. § 210.4-08 (k).

[3] Regulation S-X also requires that a parent company must file separate financial statements for any of its significant majority-owned subsidiary who contributes more than 20 percent of the parent company's income. *See* 17 C.F.R. § 210.3-09 (a).

### D. Subsequent Corrective Disclosures

On November 14, 2016, Kandi announced that Wang resigned as CFO and Mei Bing was the new CFO. *Id*. ¶ 190. Wang remained as a director of Kandi until November 15, 2017. *Id*. ¶ 191. The SEC issued a comment letter on February 8, 2017 stating that Defendants had been misclassifying Kandi's notes receivable. *Id*. ¶ 201. Kandi's response on March 7, 2017 admitted that its classification was not in compliance with GAAP. *Id*. ¶ 202. Meanwhile, Kandi also prepared an amended 2015 10-K in which it restated its financial disclosures for 2014 and 2015. *Id*. ¶ 204. On March 13, 2017, Kandi announced that its financial statements for 2014 and 2015 should no longer be relied on. *Id*. ¶ 210. On March 16, 2017, Kandi filed its 2016 10-K in which it restated its financial statements for 2014 and 2015. *Id*. ¶ 216. The restatements in the 2016 10-K included, *inter alia*,: (1) corrections to the classification of notes receivable and notes payable in its prior statements of cash flows in 2014 and 2015; (2) revisions to separately identify certain related-party accounts on the face of the Balance Sheets; (3) separate financial statements for the JV Company in 2014, 2015 and 2016. *Id*. ¶¶ 204, 216.

## II. PROCEDURAL HISTORY

On March 16, 2017, Plaintiffs filed the instant action. Doc. 1. On May 29, 2018, the Court entered an order appointing Gary Vatter and Gerald Klein as Co-Lead Plaintiffs. Doc. 24. On August 31, 2018, Plaintiffs filed the CAC. Doc. 42. On November 15, 2018, the Court entered an order on stipulation consolidating this case with two related actions, 17 Civ. 2932 and 17 Civ. 3049, into one consolidated action captioned "In re Kandi Technologies Group, Inc. Securities Litigation" pursuant to Federal Rule of Civil Procedure 42. Doc. 48. Defendants moved to dismiss the consolidated action on December 14, 2018. Doc. 50.

## III. LEGAL STANDARDS

### A. Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 680.

### B. Heightened Pleading Standard under Rule 9(b)

A complaint alleging securities fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") by stating the circumstances constituting fraud with particularity. *See, e.g.*, *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007)). These requirements apply whenever a plaintiff alleges fraudulent conduct, regardless of whether

6

fraudulent intent is an element of a claim. *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("By its terms, Rule 9(b) applies to 'all averments of fraud.'")

Specifically, Rule 9(b) requires that a securities fraud claim based on misstatements must identify: (1) the allegedly fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent. *See, e.g.*, *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting *Rombach*, 355 F.3d at 170). Conditions of a person's mind—such as malice, intent or knowledge—may be alleged generally. *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (quoting Fed. R. Civ. P. 9(b)). Like Rule 9(b), the PSLRA requires that securities fraud complaints "'specify' each misleading statement," set forth the reasons or factual basis for the plaintiff's belief that the statement is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1), (2)); s*ee also Slayton v. Am. Express, Co*., 604 F.3d 758, 766 (2d Cir. 2010).

These heightened pleading standards, when viewed together with the more general standards applicable to Rule 12(b)(6) motions to dismiss under *Twombly* and *Iqbal*, make clear that "plaintiffs must provide sufficient particularity in their allegations to support a plausible inference that it is more likely than not that a securities law violation has been committed." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014), *aff'd* 604 F. App'x 62 (2d Cir. 2015) (citing *ECA, Local 134*, 553 F.3d at 196).

## IV. DISCUSSION

In short, Plaintiffs' core allegations concern two sets of misrepresentations by Defendants. First, Plaintiffs aver that Defendants mislabeled hundreds of millions of dollars'

worth of accounts receivable as cash activity and improperly included them in Kandi's statement of cash flows throughout the Class Period. Second, Plaintiffs aver that Defendants misrepresented that they had effective disclosure controls when they had failed to properly disclose related-party transactions and file separate financial statements for the JV Company as required by Regulation S-X.

Section 10(b) of the Exchange Act prohibits using or employing, "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j(b), while SEC Rule 10b-5 creates liability for a person who makes "any untrue statement of a material fact or . . . omit[s] to state a material fact . . . in connection with the purchase or sale of any security." *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 397 (S.D.N.Y. 2013) (quoting 17 C.F.R. § 240.10b-5 (1951)). To state a private civil claim under Section 10(b) and Rule 10b-5, a plaintiff must plead that: (1) the defendant made a material misrepresentation or omission, (2) with scienter, *i.e.*, a wrongful state of mind, (3) in connection with the purchase or sale of a security, and (4) that the plaintiff relied on the misrepresentation or omission, thereby (5) causing economic loss. *Dura Pharms.*, 544 U.S. at 341-42.; *see also, e.g.*, *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). Defendants argue that Plaintiffs fail to adequately plead scienter and falsity. Def.'s Mem. at 11-19. Defendants further argue that Plaintiffs' section 20(a) claims are predicated on their section 10(b) claims and thus should be dismissed for failure to state a claim. *Id*. The Court addresses each in turn.

### A. Scienter

To satisfy the PSLRA's pleading requirements for scienter, a plaintiff must allege facts with particularity that would give rise "to a *strong* inference that the defendant acted with the

8

required state of mind." *ECA, Local 134*, 553 F.3d at 198 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). As Supreme Court precedent dictates, a "strong inference" that a defendant acted with a certain intent is one that is "more than merely plausible or reasonable—it must be cogent and *at least as compelling as* any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314 (emphasis added). This inquiry goes beyond the ordinary Rule 9(b) framework and requires courts to consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.* "According to the Supreme Court, the critical inquiry is: '[w]hen the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?' If so, then scienter has been adequately pleaded. If not, the case may be dismissed." *Medis Inv'r Grp. v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 141 (S.D.N.Y. 2008) (quoting *Tellabs*, 551 U.S. at 326). To allege the scienter of a corporate defendant, a plaintiff needs not name a specific individual who acted with the requisite scienter—he needs only plead facts that "create a strong inference that someone whose intent could be imputed to the corporation" did so. *Dynex Capital Inc.*, 531 F.3d at 195 (emphasis added). The scienter of an employee acting within the scope of employment can be imputed to the employer. *See Vining v. Oppenheimer Holdings Inc.*, No. 08 Civ. 4435 (LAP), 2010 WL 3825722, at *12 (S.D.N.Y. Sept. 29, 2010).

A plaintiff may establish scienter by alleging facts that either (1) show that the defendant had both the "motive and opportunity" to commit the alleged fraud, or (2) constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134*, 553 F.3d at 198; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). "Where the plaintiff pleads scienter by conscious misbehavior or recklessness rather than motive, 'the strength of the circumstantial allegations must be correspondingly greater.'" *Medis Inv'r Grp.*,

586 F. Supp. 2d at 141–42 (quoting *Kalnit*, 264 F.3d at 142); *see also In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007) ("[T]he strength of the recklessness allegations must be greater than that of allegations of garden-variety fraud, *and* the inference of recklessness must be at least as compelling as any opposing inferences.").

Here, Defendants contend that Plaintiffs' allegations of scienter based on motive and opportunity are inadequate because they fail to allege a concrete and personal benefit to Defendants. Doc. 51 ("Def.'s Mem.") at 11-12. The Court agrees. To adequately plead a strong inference of scienter based on motive and opportunity, a plaintiff must allege that defendants "benefitted" in some specific and personal way from the alleged fraud, usually with allegations of insider trading by corporate insiders. *ECA, Local 134*, 553 F.3d at 198. Here, the Individual Defendants were high-ranking corporate officers of Kandi at all relevant times, which gives rise to the presumption of an opportunity to commit fraud. *See Oklahoma Firefighters Pension and Ret. Sys. V. Lexmark Int'l Inc.*, 367 F.Supp.3d 16, 36 (S.D.N.Y. March 19, 2019) (internal citations omitted)); *see also Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F.Supp.2d 163, 181 (S.D.N.Y. 2006) (finding that courts often presume that corporate directors and officers would have "opportunity" to commit fraud if they want to). However, Plaintiffs do not allege that the Individual Defendants sold any shares at any relevant time. Instead, Plaintiffs only plead a motive to "artificially inflate and maintain the market price of Kandi securities," a motive that has been routinely rejected by courts in this Circuit. CAC ¶ 296; *see also ECA, Local 134*, 553 F.3d at 198 ("motives that are common to most corporate officers, such as …the desire to keep stock prices high…do not constitute "motive") (internal citations omitted).

Alternatively, Plaintiffs advance the theory that Defendants acted recklessly with respect to the falsity of their statements. Doc. 54 ("Pl.'s Mem.") at 14-19. To state a claim based on recklessness, plaintiffs may either specifically allege defendants' knowledge of facts or access to information contradicting defendants' public statements, or allege that defendants failed to check information that they had a duty to monitor. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 574 (S.D.N.Y. 2012) ("*Longtop I*") (citing *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009)). Here, Plaintiffs only allege the former—that Defendants had knowledge of facts or access to information contradicting their public statements. To the extent that plaintiffs assert that defendants had access to contrary facts, the complaint must "specifically identify the reports or statements containing this information." *Id.* at 574–75 (citing *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)); *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483–84 (S.D.N.Y. 2008).

As an initial matter, Plaintiffs assert that the fact that Kandi had to restate its financial statements for 2014, 2015 and the first three quarters of 2016 due to GAAP violations is enough to show scienter. Pl.'s Mem. at 16-17. In support of their assertion, Plaintiffs cite to *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474 (S.D.N.Y. 2004) and *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248 (N.D.Cal. 2000). However, Plaintiffs do not dispute here that Kandi's restatements had no impact on Kandi's net income. Courts within the Second Circuit that have addressed this issue, including the court in *In re Atlas Air*, have consistently measured the restatements by the magnitude of their impact on corporate income. *See Plumbers & Pipefitters Local Union No. 719 Pension Tr. Fund v. Conseco, Inc.*, No. 09 Civ. 6966 (JGK), 2011 WL 1198712 at \*22 (S.D.N.Y. 2011) (finding that the restatement only had a

11

modest impact on corporate income); *see also In re Atlas Air*, 324 F.Supp.2d at 489 (collecting cases). Significantly, courts have only found evidence of recklessness when the restatements had some impact on income. *Id.* Additionally, the court in *In re Atlas Air* relied on other evidence in the record in addition to the impact of the restatement on corporate income to find scienter. *Id.* at 489-93. Plaintiffs' citation to *In re McKesson* is unavailing as the court in that case also measured the restatement by whether the GAAP violations that necessitated the restatement constituted "widespread and significant inflation of revenue." 126 F.Supp.2d at 1273. Accordingly, the Court finds that the fact that Kandi restated several periods of its financial statements due to GAAP violations does not establish scienter, especially given the lack of effect on reported corporate income for the relevant time periods. *See Conseco, Inc.*, 2011 WL 1198712 at *22 (S.D.N.Y. 2011) (finding the fact that the company [defendant] was required to restate several prior periods' financial result not indicative of scienter, especially given its modest impact on corporate income).

The court nevertheless bears in mind that "the relevant inquiry for [the Court] 'is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *In re Magnum Hunter Res. Corp. Sec. Litig.*, No. 13 Civ. 2668 (KBF), 2014 WL 2840152, at *17 (S.D.N.Y. June 23, 2014) (emphasis in original) (citing *Tellabs*, 551 U.S. at 322–23, 127). Still, a plaintiff must plead a strong inference of scienter for each alleged misleading statement. *See Novak*, 216 F.3d at 306 (quoting PSLRA). Therefore, the Court considers Plaintiffs' allegations as a whole with respect to each set of misrepresentations by Defendants to determine whether they support a strong inference of scienter.

### 1. Kandi's Accounts Receivable

Here, Plaintiffs argue that that CAC adequately pleads strong circumstantial evidence of Defendants' knowledge of facts indicating that their classification of Kandi's accounts receivable was not accurate. Pl.'s Mem. at 15-16, 18. Specifically, Plaintiffs identify the following: (1) a comment letter from SEC on November 12, 2013 that "raised questions" about Kandi's reported $80.8 million investment in the JV Company and its outstanding accounts receivable; (2) Defendants' repeated disclosures of their weak internal controls in the 2013 10-K, the 2014 Q1 10-Q and 2014 Q2 10-Q; and (3) that Wang, who was the CFO of Kandi, was deeply involved in Kandi's day-to-day operations. *Id*.

Accepting Plaintiffs' pleadings as true, they nevertheless fail to point to any specific fact that the Individual Defendants either "knew or should have known" that they were misclassifying the accounts receivable from the JV Company. *Novak*, 216 F.3d at 309. Plaintiffs' only allegation concerning the SEC comment letter states that the letter "raise[d] questions" about Kandi's outstanding accounts receivable. *See* CAC ¶ 64. However, Plaintiffs' own pleadings show that Kandi only began to either receive or assign notes receivable in the year 2014. *Id*. ¶ 217. The SEC letter could not have provided contradictory facts to Defendants' later misclassification of notes receivable. As such, Plaintiffs' reliance on *In re Bear Stearns Companies, Inc. Sec. Derivatives, & ERISA Litig.*, 763 F.Supp.2d 423 (S.D.N.Y. 2011) is misplaced as defendants did not dispute that the SEC memorandum provided contradictory facts to defendants' alleged misrepresentations in the complaint in that case.

Defendants' disclosures of their internal controls in the 2013 10-K, the 2014 Q1 10-Q and 2014 Q2 10-Q contained mostly generalities and did not contain any contradictory facts. CAC ¶¶ 77-78, 83-84, 91-92. Notably missing from the disclosures is anything that relates to

either Kandi's cash flows or notes receivable in any way. *Id*. Plaintiffs' pleadings concerning Wang in this regard suffer similar defects, as they repeat the exact same boilerplate Sarbanes-Oxley certifications without any factual allegation of Wang's awareness of red flags regarding the misclassification in Kandi's financial reporting. *See* CAC ¶¶ 112, 118, 125, 144, 155, 163, 188. Plaintiffs cite to *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F.Supp.2d 596 (S.D.N.Y. 2009) for the proposition that Defendants' repeated disclosures of some weak aspects of their internal controls alone strongly indicate their awareness of other problems with their internal controls and their impact on Kandi's financial statements. Pl.'s Mem. at 16. However, the Court in *Varghese* relied on, in addition to defendants' repeated disclosures of weak controls, defendants' personal emails with specific information indicative of their awareness of the relevant internal control deficiencies at issue. *Varghese*, 672 F.Supp.2d at 608. Plaintiffs have made no allegation of such personal knowledge here. Plaintiffs' reliance on *In re Electrobras Sec. Litig.*, 245 F.Supp.3d 450 (S.D.N.Y. 2017) and *Dobina v. Weatherford Int'l Ltd.*, 909 F.Supp.2d 228 (S.D.N.Y. 2012) are similarly misplaced. In both cases, the court found that the defendants, in addition to signing Sarbanes-Oxley certifications, personally designed, established, and maintained internal controls related to disclosure. *See In re Electrobras*, 245 F.Supp.3d at 468-69; *see also Dobina*, 909 F.Supp.2d at 247-48. Plaintiffs have not made such allegations here. As such, Plaintiffs fail to "specifically identify the reports or statements" that contradict Defendants' alleged misrepresentations on this regard. *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 459-60 (S.D.N.Y. 2010) *aff'd sub nom. Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 430 F. App'x 63 (2d Cir. 2011) (finding no scienter where plaintiff failed to allege specific facts establishing that defendants knew their public statements were inaccurate) (citation omitted).

## 2. Related Party Transactions

Plaintiffs' allegations regarding Defendants' misrepresentations of their disclosures controls suffer similar defects.

Here, the SEC comment letter in 2013 similarly could not provide any contradictory facts because Plaintiffs' own pleadings show that Kandi only supplemented corrective disclosures on related-party transactions in restating their financial statements for 2016, 2015 and 2014. CAC ¶¶ 270-271. Plaintiffs' allegations regarding Defendants' disclosures of their weak internal controls similarly fail to specifically identify any Individual Defendants' knowledge of facts that Kandi's disclosure controls were not effective. *Id*. ¶ 77-78, 83-84, 91-92. Plaintiffs' argument that Defendants' awareness of some weak aspects of their internal controls, without more, necessarily suggest their awareness of other internal control problems and their impact on Kandi's financial statements is unpersuasive.

Plaintiffs also invoke the "core operations" doctrine" in further support of their scienter allegations. Pl.'s Mem. at 18-19; *see also In re Atlas Air*, 324 F.Supp.2d at 489 (the fact that a defendant made false or misleading statements when contradictory facts of critical importance to the company either was apparent, or should have been apparent, supports an inference that high-level officers had knowledge of those facts by virtue of their positions). The Second Circuit has not expressly determined if the "core operations" doctrine remains applicable to proving scienter after the enactment of the PSLRA. *See Frederick v. Mechel OAO*, 475 Fed. Appx. 353, 356 & n.5 (2d Cir. 2012) (summary order). However, the Second Circuit has suggested that the doctrine can only provide additional support for an inference of scienter but could not establish scienter on its own. *See Schwab v. E*TRADE Fin. Corp.*, 258 F.Supp.3d 418, 434 (S.D.N.Y. 2017) (internal citations omitted); *see also In re Wachovia Wachovia Equity Sec. Litig.*, 753

F.Supp.2d 326 (S.D.N.Y. 2011). While courts within this Circuit have debated the viability of the doctrine, the majority approach treats it as additional evidence of scienter but not independently sufficient to show scienter. *Id*. There also seems to be some tension between the doctrine and the plain requirement by PSLRA that scienter be pled with particularity. *See Tyler v. Liz Claiborne, Inc.*, 814 F.Supp. 2d 323, 343 (S.D.N.Y. 2011) (stating that the plain language of PSLRA seems to limit the doctrine). In deciding whether to apply the "core operations doctrine," Courts have required that the operation at issue either make up nearly all of a company's business or be essential to its survival. *See e.g., In re Barrick Gold Corp. Sec. Litig.*, 341 F.Supp.3d 358, 374 (S.D.N.Y. 2018); *see also Tyler v. Liz Claiborne, Inc.*, 814 F.Supp. 2d 323, 343 (S.D.N.Y. 2011). Here, Plaintiffs argue that Kandi's related party transactions and their cash flows therein constitute a core operation of Kandi. Pl.'s Mem. at 19. Accepting Plaintiffs' allegations as true, Kandi's related-party transactions made up 26 and 61 percent of Kandi's income for 2014 and 2015 respectively. CAC ¶ 270.

Applying the majority approach and assuming arguendo that 61 percent is enough to invoke the doctrine, the Court finds Plaintiffs' allegations insufficient, on the basis of the "core operations" doctrine alone, to establish Defendants' scienter regarding their misrepresentations. The importance of Kandi's transactions with the JV Company should have strengthened Defendants' awareness of any specific contradictory fact or information, but they could not substitute specific factual allegations of such fact or information. *Schwab*, 258 F.Supp.3d at 434.

Therefore, Plaintiffs' allegations, viewed collectively, do not support a strong inference of scienter as compelling as any opposing inference. *Tellabs*, 551 U.S. at 314. Because failure to plead a strong inference of scienter alone is a sufficient basis for dismissal, the Court grants Defendants' motion to dismiss on this basis.

**B. Falsity**

To survive a motion to dismiss, Plaintiffs must establish that Defendants "made a statement that was '*misleading* as to a *material* fact.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)) (emphasis in original). "A violation of Section 10(b) and Rule 10b–5 premised on misstatements cannot occur unless an alleged material misstatement was false at the time it was made." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 571 (S.D.N.Y. 2014) (citing *Philip Morris*, 75 F.3d at 812–13). A statement believed to be true, but later shown to be false, is insufficient to establish actionable falsity. *Id*. (citing *Novak*, 216 F.3d at 309). Furthermore, the Second Circuit has indicated that plaintiffs cannot simply assert that a statement is false—"they must demonstrate with specificity why and how that is so." *Rombach*, 355 F.3d at 174. With respect to material omissions, a defendant's silence is not misleading absent a duty to disclose. *Basic*, 485 U.S. at 239 n. 17.

Here, Defendants argue that Plaintiffs plead falsity inadequately because they fail to plead that Defendants knew at the time that their alleged misrepresentations regarding their internal controls were misleading. Def.'s Mem. 18. Plaintiffs respond by arguing that Kandi's restatements constitute an admission of falsity. Pl.'s Mem. at 11. However, the fact that Kandi's restatements had no impact on Kandi's corporate income severely undercuts an inference of fraud. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F.Supp.3d 278, 295 (S.D.N.Y. 2014) (finding a restatement of modest impact insufficient to establish falsity). Plaintiffs' reliance on *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 375313 at *23 (S.D.N.Y. Feb. 17, 2005) to suggest otherwise is inapposite. To begin with, the court in that case was merely addressing motions *in limine* to exclude evidence of restatements and did not make any determination on falsity. *Id*. at *1. In the same paragraph that Plaintiffs cite to, the court in *In re*

17

*WorldCom* found that plaintiffs still had to show material falsity. *Id*. at * 23. Plaintiffs also argue that "effective internal controls" are crucial for investors and "assertions about existence and effectiveness of internal controls" give investors the impression that a company is in better shape than it really is. Pl.'s Mem. at 12. While a true statement, Plaintiffs' argument fails to address the defect in their pleadings regarding Defendants' knowledge that their assertions were false when made. "Falsity is a failure to be truthful—it is not a misapprehension, misunderstanding or mistake of fact at the time a statement was made." *In re Lululemon*, 14 F.Supp.3d at 571.

As such, Plaintiffs' factual allegations have not specifically shown that Defendants were aware of any facts contradicting the statements regarding internal controls when made. As such, the Court finds that Plaintiffs have failed to plausibly allege that Defendants' statements regarding internal controls were false when made. Plaintiffs' pleadings regarding Defendants' misclassifications of Kandi's notes receivable also fail for substantially the same reasons.

### C.     Section 20(a) Claims

Section 20(a) of the Exchange Act provides as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

Defendants argue that because a claim under Section 20(a) is predicated on a primary violation of securities law, the Section 20(a) claims must be dismissed. Def.'s Mem. at 19. It is axiomatic that liability for a Section 20(a) violation is derivative of liability for a Section 10(b) violation. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 297–98 (S.D.N.Y. 2006))

(in the absence of a primary violation, "control person" liability under Section 20(a) cannot exist). In light of Plaintiff's failure to adequately plead a primary violation, the Section 20(a) claims against the Individual Defendants cannot stand. Defendants' motion to dismiss Plaintiff's Section 20(a) claim is therefore GRANTED.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 50, and close the case.

It is SO ORDERED.

Dated:  September 24, 2019
       New York, New York

_____
Edgardo Ramos, U.S.D.J.